**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Esther Kirk, | No. CV-17-08254-PCT-SMB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS MOTION TO DISMISS COUNT II** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

At issue is Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Motion to Dismiss Count II of the Complaint (Doc. 12, "Mot."), to which Plaintiff Esther Kirk Responded (Doc. 14, "Resp."), and ONHIR replied (Doc. 16, "Reply"). ONHIR has also filed the administrative record. (Doc. 13, the "AR"). Neither party requested oral argument on the motion, and the Court does not believe it is necessary to resolve the motion.

## I. Background

This is a Navajo-Hopi Land Settlement Act (the "Settlement Act") case. 25 U.S. §§ 640d–640d-31 (repealed 1974); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989) (explaining the history leading up to the Settlement Act); *Herbert v. Office of Navajo and Hopi Indian Relocation*, CV06-03014-PCT-NVW, 2008 WL 11338896, at *1 (D. Ariz. Feb. 27, 2008) (same). ONHIR denied Ms. Kirk relocation benefits in December 2011. (AR 378). Ms. Kirk's Complaint alleges two counts: (1) ONHIR's final decision denying eligibility was "unsupported by evidence

or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" (citing 5 U.S.C. § 706 (2)(A), (E)); and (2) ONHIR breached its "fiduciary obligation" to her by failing to inform her of relocation benefits and delaying its decision. (Doc. 1, "Complaint"). She brings both claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. (Complaint at ¶¶ 39, 45). In the Motion, ONHIR argues that this Court does not have jurisdiction over Ms. Kirk's second count because she did not raise it in the administrative proceeding and, therefore, there is no "final agency action" to review.

The relevant facts from the AR and the pleadings are as follows. Ms. Kirk was born July 6, 1969. (AR 337). She is a member of the Navajo Nation who relocated from Hopi Partition Land ("HPL") to Navajo Partition Land ("NPL") on June 2, 1986. (Complaint ¶ 15; AR 239, 337). She did not apply for relocation benefits prior to the July 7, 1986 deadline. (AR 23; Resp. at 2). She first contacted ONHIR for relocation benefits in February 1991, but she was turned away. (AR 7–12; Resp. at 2). In 2005, ONHIR contacted her to inform her that the Office would begin accepting late applicants. (AR 18). Ms. Kirk timely applied for Relocation benefits at that time, and ONHIR denied her application on December 19, 2005. (AR 36–40; AR 61–64). She then appealed on January 9, 2006. (AR 66–69; Complaint ¶ 26). On appeal, ONHIR waived the time limits for holding hearings and taking final agency action pursuant to 25 C.F.R. § 700.13(b). (AR 73).

Ms. Kirk's appeal was heard by the Independent Hearing Officer ("IHO") on June 17, 2011. (AR 238). The IHO denied her appeal in August 2011, concluding that Ms. Kirk was unable to prove she was a self-supporting head of household when she relocated to the NPL. (AR 336–343). She asked the IHO to reconsider his ruling, which he denied on September 23, 2011. (AR 372–73). The Executive Director of ONHIR issued a letter on December 9, 2011, affirming the denial of benefits. (AR 378). Included in the letter was that the Director determined the IHO recommended decision was correct and that the letter constituted final agency action in the matter. (AR. 378).

In her Response, Ms. Kirk argues she was not required to exhaust administrative remedies in order to bring this claim, ONHIR cannot rule on its breach of trust, ONHIR is

biased, and she raised fiduciary issue before the agency resulting in final agency action. In alleging she raised the issue, she points to the IHO's decision explaining there was no written evidence of her 1985 summer employment. (Resp. at 15; AR 342). She also says her request for reconsideration raised the delay claim but does not specifically cite to where in the request. (Resp. at 15). There is nothing in the IHO's Findings of Fact, Conclusions of Law, and Decision addressing an alleged breach of obligation. (AR 336–343). The same goes for his Order denying her request for reconsideration. (AR. 372–73).

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because our jurisdiction is limited, it is to be presumed that a cause lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Kokkonen*, 511 U.S. at 377. "A motion to dismiss for lack of subject mater jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006). "With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

## III. Analysis

Unless Congress specifies otherwise, we review agency action under the APA, 5 U.S.C. § 706(2)(A). *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). A reviewing court can reverse an ONHIR decision if the decision is "arbitrary, capricious, an

abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122. The court can only review "final agency action[s]." 5 U.S.C. § 704 (providing for judicial review of "final agency actions"); 25 C.F.R. § 700.303 ("No decision . . . subject to appeal to the Commission shall be considered final agency action subject to judicial review . . . ."). Generally, an agency action is final when it meets two conditions: (1) the action is the "consummation of the agency's decisionmaking process" and not "merely tentative or interlocutory" in nature; and (2) it is an action by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted).

Courts will also generally decline to review issues not raised in administrative proceedings. *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 2004). When a statute requires issue exhaustion in administrative proceedings, failure to raise an issue there prevents judicial review of that issue. *Sims v. Apfel*, 530 U.S. 103, 108 (2000); *See also Darby v. Cisneros*, 509 U.S. 137, 147 (1993) (The APA "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule[.]"). Courts will also "regularly" decline to hear issues not raised in the administrative proceedings when an agency's regulations require issue exhaustion in administrative appeals. *Id.* Requiring issue exhaustion prevents plaintiffs from bypassing the administrative scheme. *Id.*; *Gonzalez v. Dep't of Homeland Security*, 508 F.3d 1227, 1234 (9th Cir. 2007). Courts have also required issue exhaustion in the absence of a statute or regulation. *Sims*, 530 U.S. at 108. As *Sims* explains, judicially-imposed issue exhaustion is analogous to the rule that appellate courts will not consider arguments not raised before trial courts, because it allows all parties to offer all the evidence without being surprised on appeal by a final decision based on issues for which they have had no opportunity to introduce evidence. *Id.* at 108–09 (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). Exhaustion also "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency. *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds, as recognized in Booth v. Churner*, 532 U.S. 731, 740 (2001).

Exhaustion recognizes that agencies "ought to have primary responsibility for the programs that Congress has charged them to administer," and allows agencies "the opportunity to correct [their] own errors." *Id.* "Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* Exhaustion principles are also of special concern when flouting of administrative process would "weaken an agency's effectiveness by encouraging disregard of its procedures." *Id.*

There are instances where issue exhaustion is not desirable, but "[e]xceptions to exhaustion requirements are usually limited, and apply only in extraordinary circumstances, such as, when the arbitral process would be futile or would cause the plaintiff irreparable injury." *Bd. of Trustees of the Const. Laborers' Pension Trust for So. Ca. v. M.M. Sundt Const. Co.*, 37 F.3d 1419, 1420–21 (9th Cir. 1994). Another such instance is when administrative proceedings are not adversarial in nature. *Sims*, 530 U.S. at 109–10 ("Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest."). Courts have also found exceptions when requiring resort to the administrative remedy would cause undue prejudice to subsequent court actions, when there is doubt the agency can grant effective relief, and when an administrative body is "biased or has otherwise predetermined the issue before it." *McCarthy*, 503 U.S. at 146–48. To determine whether exhaustion is required, courts must "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146.

Recognizing that plaintiffs in Ms. Kirk's situation have not been persuasive in arguing that they are in one of the "extraordinary circumstances" allowing for exception to the general rule that courts will not consider issues not raised in administrative proceedings, District of Arizona courts have declined to allow a breach of fiduciary duty claim against ONHIR on at least four similar occasions. *See Torpey v. ONHIR*, No. CV-17-08184-PCT-

DLR, 2018 WL 3159731, at *2–3 (D. Ariz. June 28, 2018); *Tso v. ONHIR*, No. CV-17-08183-PCT-JJT, 2018 WL 341699, at *2 (D. Ariz. July 12, 2018); *George v. ONHIR*, No. CV-17-08200-PCT-DLR, 2018 WL 3536733, at *2–3 (D. Ariz. July 23, 2018); *Bahe v. ONHIR*, No. CV-17-08016-PCT-DLR, 2017 WL 6618872, at *6 (D. Ariz. Dec. 28, 2017) *appeal filed*, No. 18-15271 (9th Cir. Feb. 20, 2018). In response, Ms. Kirk argues that *Herbert v. ONHIR* allows a breach of trust claim. CV06-03014-PCT-NVW, 2008 WL 11338896 (D. Ariz. Feb. 24, 2008). For the reasons that follow, the court agrees that Ms. Kirk's case is similar to *Torpey*, *Tso*, *Bahe*, and *George,* and she misconstrues *Herbert*, which does not create a claim for breach of fiduciary duty in this scenario.

1. Ms. Kirk failed to raise the issue of breach of fiduciary duty in the administrative proceedings.

To raise an issue in an administrative proceeding, "a claimant need not raise an issue using precise legal formulations, as long as enough clarity is provided that the decision maker understands the issue raised." *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010). "[A]lerting the agency in general terms will be enough if the agency has been given 'a chance to bring its expertise to bear to resolve [the] claim.'" *Id.* (quoting *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002). There is no "bright-line standard" to consider whether an issue has been raised with "sufficient clarity to allow the decision maker to understand and rule on the issue raised." *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 968 (9th Cir. 2006) (quoting *Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th cir. 2006)). Therefore, courts "must consider exhaustion arguments on a case-by-case basis." *Id.*

Ms. Kirk points to two places in the AR where she believes she raised the fiduciary duty issue: (1) at the hearing where she explained she could not find employment records from 1985 because they were too old; and (2) in her request for reconsideration where she said it was unfair to require a person to provide employment records 21 years after employment. (Resp. at 15). Having read both her testimony at the hearing and her request for reconsideration, the Court is unable to find anything that would alert ONHIR Ms. Kirk was alleging a breach of fiduciary duty.

To be sure, she did testify that she tried to get employment records, but they were unavailable. (AR 269–270). Her request for reconsideration also argued the IHO's decision placed too much emphasis on the absence of work record from long ago. (AR 351). While a claimant is not required to "raise an issue using precise legal formulations," nothing in the AR could plausibly rise to the level of alerting the agency that she believed the agency breached its fiduciary obligation to her by not contacting her prior to her relocating to the NPL. She also failed to argue that ONHIR's delay in adjudicating relocation claims is why she was unable to obtain employment records from 1985. In fact, her own testimony alludes to a different conclusion: that they may never have been available. (AR 269). She testified that when she attempted to obtain employment records she was told "nothing was being saved during those years. That they didn't have computers back then, everything was kept manual and they told me that they might have just shred all those [sic] paperwork." (AR 269).

The AR in this case stands in stark contrast to *Herbert*, one of the cases on which Ms. Kirk heavily relies. In *Herbert*, the plaintiff alleged in the administrative proceeding that ONHIR had an affirmative duty to contact him prior to the July 7, 1986, deadline to apply for relocation benefits, and the IHO decided the Commissioner did not "abdicate[] his responsibility to locate applicant and persuade him to complete an eligibility application." 2008 WL 11338896 at *5. Because the administrative record in that case showed that the issue was decided by the IHO, the court considered whether ONHIR's failure to contact the plaintiff resulted in the denial of relocation benefits. *Id.* at *5–6. At the same time, it declined to consider three similar issues raised by the plaintiff because there was no evidence that they had been raised in the administrative proceeding. *Herbert* is easily distinguishable from Ms. Kirk's situation and shows how Ms. Kirk could have raised the issue in her hearing (which occurred after *Herbert* was decided) but failed to do so.

2. <u>Ms. Kirk has failed to show her situation is an exception to the general rule requiring exhaustion.</u>

Ms. Kirk argues that a number of reasons cut in favor of her not being required to have raised the issue in the administrative proceeding. The Court will consider them one in turn.

   i.  *Ms. Kirk's argument that exhaustion of administrative remedies is not required nor jurisdictional*

Regardless of whether statutes or regulations require administrative exhaustion, courts will generally not review issues not raised in administrative proceedings. *Reid*, 765 F.2d at 1460; *see also Sims*, 530 U.S. at 108 ("It is true that we have imposed an issue-exhaustion requirement even in the absence of a statute or regulation."). Exceptions to this rule are only found in limited, extraordinary circumstances. *M.M. Sundt Const. Co.*, 37 F.3d at 1420–21. The rule is longstanding, and its rationale is intuitive: "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L. A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952). It would "usurp[] the agency's function" to set aside an administrative decision on a ground not presented to the agency. *Unemployment compensation Commission of Territory of Alaska v. Aragon*, 329 U.S. 142, 155 (1946). Furthermore, in reviewing an agency proceeding, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). *De novo* factfinding by the district court on review of an agency proceeding is rarely done. *Id.*

Ms. Kirk has not provided any persuasive authority for why she represents an exceptional circumstance to exempt her from the general rule. Unlike in *Sims*, ONHIR proceedings are adversarial, featuring testimony and evidence from both sides and competing memoranda before an independent adjudicator. When the administrative proceedings are adversarial, the parties are expected to develop the issues and "the rationale for requiring issue exhaustion is at its greatest." *Sims*, 530 U.S. at 109–10. Allowing Ms. Kirk to bypass administrative review on this issue would be akin to allowing an appellate

court to consider issues not presented at trial. It would also require the Court to consider facts not in the record and to conduct *de novo* factfinding. This runs counter to the nature of judicial review of agency decisions. Ms. Kirk's argument that she can bring Count II because exhaustion of administrative remedies is not required nor jurisdictional is unpersuasive.

> ii. *Ms. Kirk's argument that the* McCarthy *balancing test favors not dismissing Count II*

Ms. Kirk argues that the *McCarthy* balancing test weighs in favor of not requiring exhaustion here. To determine whether exhaustion is required, courts must "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. *McCarthy* provides some guidance on what institutional interests should be considered. Exhaustion protects "administrative authority" and "promotes judicial efficiency." *Id.* at 145. It promotes judicial efficiency by allowing an agency to correct its own mistakes, by preventing piecemeal appeals, and by developing a useful record for review. *Id.* Exhaustion considerations are given extra weight when the agency proceedings allow the agency to apply its "special expertise" and when bypassing the administrative process could weaken an agency's effectiveness by encouraging disregard of its procedures. *Id.*

Ms. Kirk relies on *Ortega-Morales v. Lynch*, 168 F. Supp.3d 1228 (D. Ariz. 2016) to argue that requiring prudential exhaustion is inappropriate here. There, the Court held that prudential exhaustion was not required when appealing from a United States Citizenship and Immigration Services ("USCIS") ruling that denied plaintiffs' applications to become United States Citizens. *Id.* at 1232. Ms. Kirk's arguments focus on the fact that the statute in that case did not impose any exhaustion requirement. *Id.* at 1236. What the case reveals, however, is that the lack of an exhaustion requirement was not the crux of the issue. The Court held that prudential exhaustion was inappropriate because the statute mandated *de novo* review by the Court. *Id.* at 1240. Therefore, the institutional interests of USCIS were much lower than when Congress "assigns an agency the main decision-making role and to the courts only a reviewing role to check whether the agency crossed

over its bounds of determining facts and law and of exercising discretion." *Id.*

ONHIR has much stronger institutional interests favoring exhaustion than USCIS did in *Ortega-Morales*. It is the primary decision maker of whether an applicant receives relocation benefits and judicial review is much more deferential. *See Bedoni*, 878 F.2d at 1122. If courts were to decide an issue not raised in the ONHIR proceedings, it would interfere with their proceedings and result in the courts conducting their own factfinding and conducting review inconsistent with the deferential role mandated by congress. *See* 5 U.S.C. § 706. Furthermore, allowing applicants to bypass administrative review on particular issues would encourage disregard of ONHIR's procedures. At this point, it would encourage all potential applicants that missed the July 7, 1986, deadline, but have since applied for relocation benefits to file suit in district court whether they have received a final agency action or not. The institutional considerations are strong.

*McCarthy* also provides guidance for what to consider when evaluating the individual interests: (1) whether resorting to an administrative prejudice may cause undue prejudice such as an unreasonable or indefinite timeframe for administrative action; (2) whether the agency could grant effective relieve; and (3) whether the agency has shown to be biased or has otherwise predetermined the issue. 503 U.S. at 146–49. First, while the Court is sympathetic to the delay for Ms. Kirk, there is not evidence that the delay in ONHIR proceedings is unreasonable. In the wake of *Herbert*, ONHIR developed new policies and procedures that caused a delay in commencing proceedings. (AR 78–79). They also received "almost 1300" additional applicants around that same time. (AR 78–79). Additionally, Ms. Kirk's own delay of almost six years from final agency action to filing suit seems to indicate time is not of the essence for her. Second, Ms. Kirk is incorrect that ONHIR is not able to grant effective relief. As she states herself, ONHIR was "created by Congress pursuant to the Settlement Act, Pub. L. No. 93-531, . . . to carry out the relocation of members of the Navajo and Hopi Tribes who resided on land partitioned to the other tribe and provide relocation assistance benefits for households required to relocate." Complaint ¶ 16. There is no reason to believe that she cannot raise her breach of fiduciary

duty claim in an administrative hearing, obtain a ruling, and file for judicial review under the APA, much like *Herbert* did. Third, there is no direct evidence that ONHIR is biased or predetermined this issue. Ms. Kirk points to the IHO's low rate of overturning appeals as evidence of ONHIR's bias or predetermination of the issue. This Court, however, is in no position to second guess the IHO's decisions in cases not before it. Accordingly, the institutional considerations favoring exhaustion outweigh Ms. Kirk's individual interests in this case.

## IV. Conclusion

Ms. Kirk failed to raise the fiduciary duty issue in her administrative proceeding. The general rule is that such a failure prevents judicial review of issues not raised in the administrative proceeding, and Ms. Kirk has not persuaded the Court that her circumstances are one of the exceptions to the rule. Therefore, the Court cannot review it.

Accordingly, it is ordered **GRANTING** ONHIR's Motion to Dismiss Count II.

Dated this 12th day of February, 2019.

Honorable Susan M. Brnovich
United States District Judge